UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

UNITED STATES OF AMERICA,

               Plaintiff,

      -against-

NEW YORK CITY BOARD OF EDUCATION; CITY OF
NEW YORK; LILLIAM BARRIOS-PAOLI,
PERSONNEL DIRECTOR, NEW YORK CITY
DEPARTMENT OF PERSONNEL (in her official
capacity); NEW YORK CITY DEPARTMENT OF
PERSONNEL,

             Defendants,

     and

JOHN BRENNAN; JAMES G. AHEARN; DENNIS
MORTENSON and SCOTT SPRING,

          Intervenors,

     and

JANET CALDERO, CELIA I. CALDERON, MARTHA
CHELLEMI, ANDREW CLEMENT, KRISTEN
D'ALESSIO, LAURA DANIELE, CHARMAINE
DIDONATO, DAWN L. ELLIS, MARCIA P. JARRETT,
MARY KACHADOURIAN, KATHLEEN LUEBKERT,
ADELE A. MCGREAL, MARIANNE MAOUSAKIS,
SANDRA D. MORTON, MAUREEN QUINN, HARRY
SANTANA, CARL D. SMITH, KIM TATUM, FRANK
VALDEZ and IRENE WOLKIEWICZ,

          Intervenors,

     and

PEDRO ARROYO, JOSE CASADO, CELESTINO
FERNANDEZ, KEVIN LAFAYE, STEVEN LOPEZ,
ANIBAL MALDONADO, JAMES MARTINEZ,

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  MAY 30 2008  ★

BROOKLYN OFFICE

ORIGINAL
DEF
CIM

**MEMORANDUM & ORDER**

ACTION I
No. 96-CV-0374 (FB) (RML)

WILBERT MCGRAW, SILVIA ORTEGA DE GREEN and NICOLAS PANTELIDES,

                    Intervenors.
-----------------------------------------------------------------------x
-----------------------------------------------------------------------x
JOHN BRENNAN; JAMES AHEARN; ERNIE TRICOMI; SCOTT SPRING; DENNIS MORTENSEN; JOHN MITCHELL and ERIC SCHAUER,

                    Plaintiffs,                                        ACTION II
                                                              No. 02-CV-0256 (FB) (RML)
        -against-

JOHN ASHCROFT; RALPH BOYD; UNITED STATES DEPARTMENT OF JUSTICE; NEW YORK CITY BOARD OF EDUCATION; CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES and WILLIAM J. DIAMOND,

                    Defendants.
-----------------------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
ESTHER TAMBURO-LANDER, ESQ.
United States Department of Justice
Employment Litigation Section
950 Pennsylvania Ave., N.W.
Washington, DC 20530

*For the Defendants:*
LAWRENCE J. PROFETA, ESQ.
The City of New York Law Department
100 Church St.
New York, NY 10007

*For the Intervenors:*
*For Intervenor Brennan, et al.:*
MICHAEL E. ROSMAN, ESQ.
Center for Individual Rights
1233 20th Street, N.W., Suite 300
Washington, DC 20036

*For Intervenor Arroyo, et al.:*
MATTHEW B. CALANGELO, ESQ.
NAACP Legal Defense Fund &
Educational Fund, Inc.
99 Hudson St., 16th Floor
New York, NY 10013

*For Intervenor Culdero, et al.:*
EMILY J. MARTIN, ESQ.
American Civil Liberties Union
Women's Rights Project
125 Broad St., 18th Floor
New York, NY 10004

**BLOCK, Senior District Judge:**

Familiarity with the Court's Memoranda and Orders of September 11, 2006 ("September 11th M&O"), *United States v. New York City Bd. of Educ.*, 448 F. Supp. 2d 397 (E.D.N.Y. 2006), and April 20, 2007 ("April 20th M&O"), *United States v. New York City Bd. of Educ.*, 487 F. Supp. 2d 220 (E.D.N.Y. 2007), is presumed.  Although the prior M&Os addressed a wide array of the issues raised by this complex and highly contentious litigation, two issues remain to be decided before the Court can make its final determination as to validity of the Agreement between the Board and the United States in the face of the Brennan Intervenors' challenges under Title VII and the Fourteenth Amendment.

First, as explained in the April 20th M&O, the Court must decide whether the Board and the United States intended to categorize black and Hispanic Offerees into "testing-claim beneficiaries" and "recruiting-claim beneficiaries" based upon whether they took and failed or effectively failed a challenged exam.  *See* 487 F. Supp. 2d at 233.[1]  This determination is necessary because the Court has held that there was sufficient evidence to warrant a race-conscious remedy only with respect to testing discrimination, thereby rejecting the Board's and the United States' assumption that the Agreement was an appropriate race-conscious remedy for both testing and recruiting discrimination.  *See id.*

_____

[1]As explained in the April 20th M&O, a test-taker "effectively failed" an exam if, despite achieving a passing score on the exam, he or she scored below the lowest score among the test-takers ultimately hired from the list generated from the exam.  *See* 487 F. Supp. 2d at 225.  For the sake of simplicity, the Court will refer to those test-takers who failed or effectively failed an exam as having "failed" the exam.

Moreover, if the Court were to determine that the parties did not intend to distinguish between testing-claim beneficiaries and recruiting claim-beneficiaries, it would then need to reassess whether awarding retroactive seniority to blacks and Hispanics, regardless of whether they had taken and failed a challenged exam, would be a narrowly tailored remedy.

Second, the Court must determine which, if any, of the black and Hispanic Offerees who took a challenged exam were actual victims of testing discrimination who received "make-whole" relief. This determination is necessary because, while retroactive seniority for purposes of transfers and TCAs need not be limited to actual victims of discrimination to comport with Title VII and the Fourteenth Amendment, *see* Sept. 11th M&O, 448 F. Supp. 2d at 431, 439-40, only actual victims of testing discrimination are entitled to retain their retroactive seniority for layoff-protection purposes, and only insofar as that remedy is necessary to undo the effects of such discrimination. *Id.* at 431-33, 440-41.[2]

The Court held an evidentiary hearing on the categorization issue on August 20, 2007, and subsequently invited submissions on all remaining issues. For the following reasons, the Court concludes that the parties to the Agreement intended to categorize black and Hispanic Offerees as either testing-claim beneficiaries or recruiting-claim beneficiaries.

_____

[2]If the Court were to determine that the Board and the United States did not distinguish between black and Hispanic Offerees who took a challenged exam and those who did not, and that awarding retroactive seniority without making such a distinction were narrowly tailored, the determination of actual-victim status would still be limited to black and Hispanic Offerees who took a challenged exam; any Offeree who did not take a challenged exam cannot possibly be an actual victim of testing discrimination and, therefore, not entitled to retain retroactive seniority for layoff purposes.

With respect to actual-victim status, the Court concludes that, of the nine testing-claim beneficiaries whose actual-victim status is in dispute, Ricardo Cordero and Vernon Marshall are actual victims of testing discrimination, but that there is insufficient evidence to refute the Brennan Intervenors' challenges as to the remaining seven.

## I. CATEGORIZATION OF BENEFICIARIES

### A. Background

The evidence adduced at the August 20th hearing consisted of the testimony of Norma Cote ("Cote") and Katherine Baldwin ("Baldwin"); their testimony is summarized as follows:

### 1. Norma Cote

In October 1998, the United States initiated settlement talks and proposed a settlement under which blacks, Hispanics, Asians and women would receive permanent appointments and retroactive seniority. According to Cote, who represented the Board during settlement talks, "[t]he universe of prospective beneficiaries consisted entirely of minority and women provisional[ hires]." Tr. at 14.[3] The United States told the Board "that they had chosen this particular group of people because they were already working on the job [but] did not enjoy the benefits of permanent appointment," and that "they considered these people suited for becoming part of the means of redressing the imbalance in representation of minorities precisely because they didn't think the [Board] could have any objection to them based upon lack of ability to do the job since they were already doing

---

[3]"Tr." refers to the transcript of the August 20th hearing.

it." *Id.* at 29. With some minor modifications (such as eliminating provisional hires who had since left their jobs), the Board accepted the proposal.

The Board compiled a list of approximately 54 individuals who met the agreed-upon criteria for relief (i.e., provisional hires who were members of one of the groups allegedly discriminated against). At the fairness hearing on the proposed settlement, a number of custodial employees argued that they met the criteria for benefits under the proposed agreement. The United States deferred to the Board as to whether these individuals should be added to the list of beneficiaries; the Board "accepted the genuineness and the good faith of about five . . . of those individuals." *Id.* at 25.

Cote testified that "[t]he Federal Government never made any distinction between . . . which legal theory applied to any individual beneficiary," *id.* at 14-15; that is, "the Federal Government never said to [the Board], or acted in such a way as to imply, that they had divided this universe into two groups: one whom they considered appropriate under the testing claim and one whom they considered appropriate under the recruiting claim." *Id.* at 15. At one point, Cote "asked the Federal Government lawyers whether they intended that minorities who had not taken one of the challenged exams would be included in the settlement," *id.* at 18; "their answer, without any further elaboration, was yes." *Id.* Cote was aware that "the only legal theory advanced for the woman and the Asians, regardless of whether they had taken a test or not, was the recruitment claim;" *id.* at 50; she testified, however, that blacks and Hispanics could "be thought of as falling under both claims." *Id.* at 54; *see also id.* ("We certainly never pigeonholed them into one category or the other.").

6

To the best of her recollection, Cote did not recall that the United States had "ever communicate[d] to [the Board] that it, the United States, intended the settlement agreement to provide make-whole relief calibrated to each offeree's individual injury." *Id.* at 31. In fact, Cote testified that she did not recall the United States "ever explain[ing] to [her] why they wanted these individuals to get retroactive seniority." *Id.* at 44.

Although Cote testified that neither the Board nor the United States had categorized beneficiaries according to the legal theory justifying relief, the Board did eventually determine which of the proposed beneficiaries had taken one of the challenged exams. The Board "needed to know that because retroactive seniority was calculated, in part, on whether a potential offeree had taken one of the challenged exams." *Id.* at 20. More specifically, retroactive seniority for those who had taken an exam was calculated based on the earlier of the median hire date for the exam and provisional hire date; by contrast, "people who never took a test had their retroactive seniority date determined only by their provisional hire date." *Id.* at 55. This method of calculating retroactive seniority was distinct from the legal theory underlying the awards; for example, women who had taken an exam received retroactive seniority based on the median hire date for that exam, even though the only theory underlying relief to women was recruiting discrimination.

### 2. *Katherine Baldwin*

At the time the Agreement was negotiated and executed, Baldwin was a Section Chief of the Employment Litigation Section of the Department of Justice. As such, she reviewed the United States' complaint and approved it for filing. Although she was

7

not directly involved in settlement negotiations with the Board, "[her] job was to ensure that any settlement agreement entered by the United States in the Title VII case [against the Board] met [Department of Justice ("DOJ")] standards and conformed to [DOJ] policies." Tr. at 80.

Baldwin testified that one such policy was that DOJ "would only seek relief for identified victims of discrimination, [m]ake whole relief for identified victims of discrimination." *Id.* at 84. That policy was communicated to the DOJ attorneys tasked with negotiating the settlement and "would have been part of the briefing that they gave [Baldwin] explaining . . . why the relief was remedial relief or . . . make-whole relief for identified victims." *Id.* at 87. As a result, Baldwin signed off on the Agreement and "did so on the foundation that it was individual relief." *Id.* Baldwin testified that "[i]f the United States had known or believed [the Agreement] provided relief beyond that which was necessary to make victims of discrimination whole," it would not have signed off on the Agreement. *Id.* at 110. As applied here, DOJ's policy meant that blacks and Hispanics who had not taken a test were to receive relief based on the recruiting claim. As Baldwin put it: "[Y]ou can't be a victim of testing discrimination unless you took a test." *Id.* at 90.

**B. Analysis**

As the Board and the Caldero Intervenors correctly point out, the Agreement does not categorize Offerees into testing-claim and recruiting-claim beneficiaries. As the Court explained in the April 20th M&O, the lack of categorization is not surprising because the Agreement was clearly intended to remedy both testing and recruiting discrimination. *See* 487 F. Supp. 2d at 233 ("Whatever the parties [to the Agreement] intended, their intent

8

was surely based on the assumption that both the testing claim and the recruiting claim warranted an affirmative-action remedy.").

It is clear that the recruiting claim had some role in the Agreement because women and Asians could *only* receive relief based on that claim. Both the United States and the Board understood that blacks and Hispanics were also part of the recruiting claim, and it is logical that at least some were included in the list of Offerees for that reason. Similarly, both parties understood that some blacks and Hispanics had not taken one of the challenged exams because that factor was relevant in determining whether relief would be based on the median hire date for a challenged exam or provisional hire date.

Most compelling, however, is Baldwin's testimony that DOJ's policy was to seek relief only for identified victims of a particular discriminatory practice. Although the Court credits Cote's testimony that the policy was not communicated to the Board, it is nonetheless relevant because, as Baldwin testified, the United States simply would not have condoned any agreement that went beyond such relief.

Based on that policy, the Court concludes that had the Board and the United States operated under the assumption – now embodied in the Court's holdings – that there was a sufficient evidentiary basis only for testing discrimination, blacks and Hispanics who had not taken one of the challenged exams would not have been included in the list of Offerees.[4] It follows that those individuals received relief under the recruiting claim and,

---

[4] While this is hardly an ordinary contract case, the Court relies on the general principle of contract law that "reformation may be available where the parties were under no mistake as to the words of the writing, but they supposed that the legal outcome would be different." 27 *Williston on Contracts* (4th ed. 2003) § 70:128. A mutual

in accordance with the September 11th M&O, are not entitled to the retroactive seniority they received for any purpose. The Court need not, therefore, pass on whether such relief would be a narrowly tailored remedy for those who did not take one of the exams.

## C. Application

According to the United States' Relief Chart, which is undisputed on this point, the following 10 black and Hispanic men did not take any of the challenged exams:

| | |
|---|---|
| Chioke, Salih | Rowell, Bernard |
| Howll, Edwin | Santana, Harry |
| Lewis, Jerry Dale | Smith, Carl |
| Marcelin, Joseph | Valdez, Frank |
| Punter, Percival | Villegas, Gerardo |

In addition, although Andrew Clement took Exam 1074, he scored a 94 and was hired from the list for that exam on April 4, 1997. These individuals are recruiting-claim beneficiaries and, therefore, not entitled to retain the retroactive seniority they received under the Agreement for any purpose; Clement, of course, is entitled to retain the seniority he has accrued by virtue of his appointment because that seniority did not flow from the Agreement.[5]

_____

mistake may also be grounds for rescission, _see id._ § 70:12 ("Equity may allow avoidance of a contract when both parties independently make a clear, bona fide mutual mistake . . . as to a basic assumption of the contract."); however, no party has sought to void the Agreement in its entirety, and the Court is loath to vitiate an agreement that has been in place for more than nine years.

[5]The Relief Chart also lists 19 women and one Asian male who did not take and fail an exam; because there has never been any claim of testing discrimination against those groups, it is clear that they are recruiting-claim beneficiaries. Regardless of their race, the women are entitled to retain their retroactive seniority for transfers and TCAs as an appropriate remedy for gender disparity among exam applicants, although retroactive seniority for layoff purposes runs afoul of Title VII. _See_ Sept. 11th M&O, 448

Finally, the parties dispute whether Steven Lopez should be categorized as a testing-claim beneficiary or a recruiting-claim beneficiary. Although the Brennan Intervenors do not dispute that Lopez took and failed Exam 1074, they note that this exam was for Custodian positions, but that Lopez received retroactive seniority based on his provisional hire date (11/6/95) as a Custodian *Engineer*. The fact remains, however, that Lopez took and failed a challenged exam; therefore, he is a testing-claim beneficiary.

## II. ACTUAL VICTIM STATUS

### A. Background

In addition to Steven Lopez, 26 other black and Hispanic Offerees took at least one of the challenged exams:

| | | |
|---|---|---|
| Arroyo, Pedro | Lambert, Carla | Pantelides, Nicholas |
| Bailey, Lloyd | Lashley, Belfield | Rivera, Gilbert |
| Casado, José | Maldonado, Anibal | Rivera, Sean |
| Christie, Joseph | Marshall, Vernon | Robertin, Peter |
| Cordero, Ricardo | Martinez, James | Seara, Fidel |
| Fernandez, Celestino | McGraw, Wilbert | Torres, Felix |
| Fields, Thomas | Ortega de Green, Silva | Torres, Luis |
| Johnson, Ronald | Pagan, Angel | Zaphrini (Citron), Mayla |
| LaFaye, Kevin | Pantelides, Anthony | |

As noted in the September 11th M&O, the Brennan Intervenors have acknowledged that seven of these beneficiaries "were victims of discrimination under the testing claims and received appropriate make-whole relief." 448 F. Supp. 2d at 419.[6] The parties have obviated the need to determine actual victim status for an additional ten by stipulating to

---

F. Supp. 2d at 442-43. The Asian male is not entitled to retain his retroactive seniority for any purpose. *See id.* at 435.

[6]Bailey, Christie, Lashley, Gilbert Rivera, Robertin, Felix Torres and Zephrini.

the entry of an order under which those individuals would receive an adjusted seniority date for layoff protection purposes.[7] Finally, the validity of the relief awarded to Ronald Johnson and Fidel Seara has become moot because Johnson retired in 2002 and Seara is deceased.

For the remaining eight testing-claim beneficiaries – Ricardo Cordero, Thomas Fields, Carla Lambert, Vernon Marshall, Angel Pagan, Anthony Pantelides, Sean Rivera and Luis Torres – the parties have stipulated to certain facts, but are unable to agree as to their legal effect. Thus, actual victim status for these eight must be resolved by the Court.[8]

_____

[7]The proposed order covers Pedro Arroyo, José Casado, Andrew Clement, Celestino Fernandez, Kevin LaFaye, Steven Lopez, Anibal Maldonado, James Martinez, Wilbert McGraw, Silva Ortega de Green and Nicholas Pantelides. Since, as explained above, Clement is a recruiting-claim beneficiary and not entitled to retain any retroactive seniority under the Agreement, the Court has excluded him from the proposed order.

Pursuant to the Court's Memorandum and Order of May 12, 2008, the Board notified class members of the proposed order and their right to object to its entry. *See* Docket Entry 656 (Certificate of Service dated May 14, 2008). The deadline for objections was May 23, 2008. Having received no objections, the Court concludes that the proposed order is a fair and reasonable compromise of class members' claims; it will be entered contemporaneously with this Memorandum and Order.

[8]In making these determinations, the Court is aware that none of these eight is represented by counsel. To its credit, the Board has considered itself duty-bound to defend the retroactive seniority dates ascribed to them in the Agreement.

## B. Analysis

As the Court has previously explained, make-whole relief to actual victims of discrimination is permissible under Title VII and the Fourteenth Amendment even if it negatively impacts non-minority workers:  "[C]learly established Supreme Court and Second Circuit cases hold[] that retroactive seniority can be awarded . . . to actual victims of discrimination in order to afford them make-whole relief." Sept. 11th M&O, 448 F. Supp. 2d at 428 n.39 (citing cases); *see also id.* at 438 n.50 ("[A]s in Title VII, relief that makes whole *actual* victims of discrimination is warranted [under the Fourteenth Amendment.]"). Since however, the rationale for make-whole relief to actual victims is that "the victims are being put in their rightful place," *id.* at 428 n.39, the relief is only appropriate if it "put[s] minority employees in the approximate spot on the seniority list that they would have occupied had they not been the subject of discrimination." *Chance v. Board of Examiners*, 534 F.2d 993, 999 (2d Cir. 1976).

Thus, for each of the remaining eight testing-claim beneficiaries, the Court assesses actual-victim status based on whether the retroactive seniority they received approximately corresponds to the seniority they would have received but for the discriminatory exams. On that issue, the parties to the Agreement – i.e., the United States and the Board – bear the burden of proof. *See Johnson v. California,* 543 U.S. 499, 505 (2005) ("Under strict scrutiny, the government has the burden of proving that racial classifications 'are narrowly tailored measures that further compelling governmental interests.'" (quoting *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 227 (1995))).

13

## C. Application

Applying the foregoing standards, the Court concludes that the United States and the Board have proven that Ricardo Cordero and Vernon Marshall were actual victims of testing discrimination, but that Vernon Marshall's retroactive seniority for layoff purposes must be readjusted to correspond to make-whole relief. With respect to the remaining six, the Court concludes that the Board and the United States have failed to discharge their burden of proof.

### 1. Cordero and Marshall

Cordero failed Exam 5040 and received a retroactive seniority date (1/23/89) equal to the median hire date for that exam. The Brennan Intervenors challenge that relief on the ground that Cordero was eventually hired based on his passing score on Exam 1074, which had a median hire date of 10/27/97. That Cordero eventually passed another discriminatory exam does not mean that Exam 5040 had no impact on his seniority; had he passed Exam 5040, he would have been begun accruing seniority earlier.

Marshall failed Exam 8206, which had a median hire date of 10/8/92; however, for reasons that are not clear, he received a retroactive seniority date of 4/13/90. He was hired as a permanent Custodian on 6/7/90. As both the Brennan Intervenors and the United States point out, Marshall's retroactive seniority date was not based on the median hire date for the exam he failed. While he would be entitled to retroactive seniority for layoff protection purposes as of 10/8/92, his earlier appointment as a Custodian is actually more advantageous because Custodian Engineers retain the seniority they accrued

14

as Custodians. Thus, for layoff protection purposes, Marshall's retroactive seniority date must be adjusted to 6/7/90.

### 2. *Rivera*

Rivera, who received a retroactive seniority date of 11/7/95, scored an 80 on Exam 1074, which had a median hire date of 10/27/97; although Rivera's score was below the effective pass score established when the Agreement was drafted, he was nevertheless hired based on his exam score on 2/4/00.

The United States posits that Rivera would have scored higher on a non-discriminatory exam, and, therefore, would have been hired earlier. The Court agrees with the Brennan Intervenors that Rivera's hypothetical performance is purely speculative; there is no evidence establishing – even approximately – what Rivera's score on a nondiscriminatory exam would have been, or what such a score would have yielded in terms of his hire date. Thus, the Board and the United States have not proven that Rivera was an actual victim of testing discrimination.

### 3. *The Remaining Five*

The Brennan Intervenors argue that regardless of their performance on the challenged exams, five testing-claim beneficiaries – Thomas Fields, Carla Lambert, Angel Pagan, Anthony Pantelides, and Luis Torres – did not meet the other qualifications for appointment (such as prior experience and performance on a practical exam); therefore, they argue, no retroactive seniority is necessary to undo the effects of testing discrimination

15

because these five would not have been given permanent appointments even if they had passed the challenged exams.[9]

In an order dated December 18, 2007 ("December 18th Order"), the Court directed the Brennan Intervenors to cite specific evidence supporting their challenges to qualifications; it also allowed the remaining parties an opportunity to respond.

In accordance with the December 18th Order, the Brennan Intervenors have cited the *post hoc* review of the qualifications of test failers conducted by the Board when it was still contesting the United States' claims; according to the *post hoc* review, Fields, Lambert, Pagan, Pantelides and Torres were deemed not qualified.[10]  In response, the United States argued that the *post hoc* review was not reliable, and that all Offerees were qualified to be hired as provisional employees.  The Board did not respond.

As the Court has previously noted, the *post hoc* review is not infallible because, unlike test passers, test failers were not given the opportunity to appeal an adverse determination.  Nevertheless, despite the opportunity to do so, neither the United States nor the Board has offered any concrete evidence that the *post hoc* review was incorrect as to any of the five whose qualifications are challenged; in the absence of any

---

[9]The Court once again points out that the Brennan Intervenors have not challenged the award of permanent appointments; nevertheless, the date an Offeree would have received a permanent appointment but for testing discrimination is the proper yardstick for measuring what amount of retroactive seniority was necessary to undo the effects of the discrimination.

[10]The results of the *post hoc* review is set forth in Exhibits 15 to 17 to the United States' First Expert Set of Requests for Admissions, which is Exhibit 56 to the November 15, 2004 Affidavit of Michael Rosman.

genuine factual dispute, the Court sees no need to conduct an evidentiary hearing on these Offerees' qualifications. Furthermore, that these Offerees were eventually qualified to be hired as provisional employees does not establish that they met the specific qualifications for permanent appointment at the time they took a challenged exam.[11]

Thus, the Court concludes that with respect to these five Offerees, the Board and the United States have failed to offer sufficient evidence to refute the Brennan Intervenors' contention that they would not have been given permanent appointments even if they had passed the relevant exam; as a result, these five are not entitled to retain their retroactive seniority for layoff purposes.[12]

## CONCLUSION

For the foregoing reasons, the Court concludes that had the Board and the United States operated under the assumption that the Agreement was a permissible race-conscious remedy only for testing discrimination, but not recruiting discrimination, black

---

[11]Counsel for the Arroyo and Caldero Intervenors also responded to the Brennan Intervenors' challenge to qualifications, even though they do not represent any of the beneficiaries at issue. Like the Board and the United States, however, the Arroyo and Caldero Intervenors have submitted no concrete evidence that the *post hoc* review was incorrect as to any of the five.

[12]The Court has considered the due-process implications of adjudicating the status of individuals who have not sought to intervene. In should be kept in mind that, in the context of this litigation, the Court has been called upon to adjudicate the validity of a voluntary agreement between the Board and the United States in the face of the Title VII and Fourteenth Amendment challenges mounted by the Brennan Intervenors. To the extent that the Court has upheld those challenges against those who have not intervened and had the benefit of separate counsel, it raises the issue of whether they would now have the right to initiate litigation to challenge these determinations, an issue that would only need to be resolved if they were to initiate such litigation.

and Hispanic custodial employees who had not taken and failed a challenged exam would not have been included in the universe of Offerees.

For those eight black and Hispanic Offerees who *did* take and fail a challenged exam, and whose actual-victim status is challenged, the Court concludes that Ricardo Cordero and Vernon Marshall were actual victims of testing discrimination, who are entitled to retain retroactive seniority for layoff purposes, but that Marshall's seniority date must be adjusted to 6/7/90 to constitute make-whole relief. With respect to Thomas Fields, Carla Lambert, Angel Pagan, Anthony Pantelides, Sean Rivera and Luis Torres, the Court concludes that the Board and the United States have failed to offer evidence to warrant a factual hearing on their actual-victim status.

The Court has prepared two schedules applying its holdings to the individual Offerees and setting forth the retroactivity dates that comport with Title VII and the Fourteenth Amendment for (1) transfers and TCAs and (2) layoff protection. Schedule A covers Offerees who received relief under the testing claim; Schedule B covers Offerees who received relief under the recruiting claim. Any Offeree who does not appear on either schedule is not entitled to retain any retroactive seniority received under the Agreement for any purpose.

**SO ORDERED.**

s/FB

_____

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 28, 2008

18

## Schedule A:  Testing-Claim Offerees

| Name | Seniority Date Comporting with Title VII/14th Amendment: Transfers and TCAs | Seniority Date Comporting with Title VII/14th Amendment: Layoff Protection |
|---|---|---|
| Arroyo, Pedro | 4/13/90 | 10/8/92 |
| Bailey, Lloyd | 10/8/92 | 10/8/92 |
| Casado, José | 6/16/95 | 10/27/97 |
| Christie, Joseph | 1/23/89 | 1/23/89 |
| Cordero, Ricardo | 1/23/89 | 1/23/89 |
| Fernandez, Celestino | 5/8/95 | 10/27/97 |
| Fields, Thomas | 1/23/89 | None |
| LaFaye, Kevin | 4/13/90 | 10/8/92 |
| Lambert, Carla | 1/23/89 | None |
| Lashley, Belfield | 1/23/89 | 1/23/89 |
| Lopez, Steven | 11/6/95 | 2/23/00 |
| Maldonado, Anibal | 6/16/95 | 10/3/97 |
| Marshall, Vernon | 4/13/90 | 6/7/90 |
| Martinez, James | 2/12/96 | 10/27/97 |
| McGraw, Wilbert | 4/13/90 | 10/8/92 |
| Ortega de Green, Silva | 6/16/95 | 10/27/97 |
| Pagan, Angel | 1/23/89 | None |
| Pantelides, Anthony | 1/23/89 | None |
| Pantelides, Nicholas | 1/23/89 | 10/27/97 |
| Rivera, Gilbert | 1/23/89 | 1/23/89 |
| Rivera, Sean | 11/7/95 | 2/4/00 |
| Robertin, Peter | 1/23/89 | 1/23/89 |
| Torres, Felix | 1/23/89 | 1/23/89 |
| Torres, Luis | 10/8/92 | None |
| Zaphrini (Citron), Mayla | 1/23/89 | 1/23/89 |

## Schedule B: Recruiting-Claim Offerees

| Name | Seniority Date Comporting with Title VII/14th Amendment: Transfers and TCAs | Seniority Date Comporting with Title VII/14th Amendment: Layoff Protection |
|---|---|---|
| Caldero, Janet | 1/23/89 | None |
| Calderon, Celia | 11/7/94 | None |
| Chellemi, Martha | 11/7/94 | None |
| D'Alessio, Kristen | 6/28/96 | None |
| Daniele, Laura | 1/23/89 | None |
| DiDonato, Charmaine | 1/23/89 | None |
| Ellis, Dawn | 12/3/93 | None |
| Farr, Elaine | 8/30/93 | None |
| Gabrielson (McMahon), Margaret | 9/23/94 | None |
| Jarrett, Marcia | 11/7/94 | None |
| Kachadourian, Mary | 1/23/89 | None |
| Leubkert (Falzarano), Kathleen | 12/3/93 | None |
| Manousakis, Mariane | 6/20/94 | None |
| Morton, Sandra | 1/30/95 | None |
| Quinn, Maureen | 1/30/95 | None |
| Sullivan (McGreal), Adele | 11/9/92 | None |
| Tatum, Kim | 1/23/89 | None |
| Wolkiewicz, Irene | 6/20/94 | None |